# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **CASEY GOSPODAREK,** | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT AND JURY DEMAND** |
| **THE BOSTON BEER COMPANY, INC.** | ) |
| Defendant. | ) |

## INTRODUCTION

1. Plaintiff Casey Gospodarek brings this Complaint against Defendant, The Boston Beer Company, Inc. ("Boston Beer," the "Company," or "Defendant").

2. Boston Beer has long tolerated, and refused to address its employees' complaints about, a discriminatory and harassing work environment; instead, it requires its employees to sign—and then ruthlessly enforces—onerous and unconscionable non-compete agreements which effectively prevent them from working anywhere in the entire beer industry, in any capacity.

3. Boston Beer thus compels employees—including Plaintiff—to accept unfair wages and acts of discrimination, harassment, and retaliation, because if they stop working for Boston Beer, their options for new employment are subject to outrageously broad restrictions and additional acts of post-employment retaliation.

## PARTIES

4. Plaintiff is a citizen of Chicago, Illinois, where she is domiciled.

5. Defendant is an incorporated entity under the laws of Massachusetts, maintaining its citizenship therein, and operates its principal office at One Design Center Place, Suite 850 Boston, Massachusetts, 02210.

1

6. Upon information and belief, Boston Beer employs sales representatives in Massachusetts, Vermont, New Hampshire, Illinois, Indiana, New York, California, Pennsylvania, Delaware, Washington, Oregon, and Ohio, among other places.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff and Defendant are diverse from one another, as citizens of different states; and because the matter in controversy exceeds the value of $75,000.

8. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1), as this is where Defendant resides; and pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

9. Boston Beer hired Ms. Gospodarek in October 2020 as a brewery representative—an entry level sales role—in Indianapolis, Indiana, and assigned her to cover the territory between Indianapolis and Jefferson, Indiana.

10. As a condition of her employment, Ms. Gospodarek received an offer letter, attached hereto as Exhibit A, and was required to sign a strict and far-reaching one-year non-compete agreement.

11. In June 2022, Ms. Gospodarek was promoted to "Senior Brewery Representative" which included various additional job duties and responsibilities, among them: additional wholesaler accounts; more direct communication with higher level managers at Boston Beer; presentations at wholesaler meetings; work with larger buying groups; and work with local chains that were not covered by a Boston Beer National Account Manager or Account Specialist.

12. As a result of Ms. Gospodarek's promotion to Senior Brewery Representative, she

received a pay raise, but was not required to sign a new non-compete agreement.

13. In September 2022, Boston Beer promoted Ms. Gospodarek to "Key Account Specialist" and relocated her to Chicago, Illinois. This promotion included additional job duties and responsibilities, among them: additional and larger buying groups; long term planning and forecasting; and determining monthly specials and promotions.

14. As part of this promotion, Ms. Gospodarek received and offer letter from Boston Beer, attached hereto as Exhibit B, and was required to sign a new employment agreement, containing the same "covenant not-to-compete."

15. In November 2023, despite years of consistently strong performance, Ms. Gospodarek learned she would be receiving a poor performance review for 2023; this was unjust and apparently due to Ms. Gospodarek reporting several incidents of her managers' discriminatory and hostile acts to Human Resources.

16. By February 2024, Ms. Gospodarek felt she could no longer work for Boston Beer, as it was taking an extreme toll on her physical and mental health; she submitted her formal resignation on February 28, 2024.

17. On March 5, 2024, Ms. Gospodarek's supervisor learned that a former Boston Beer employee had accepted a position in Illinois with "Marc Anthony," a competitor of Boston Beer. Ms. Gospodarek's supervisor relayed that this individual needed to be careful because if Boston Beer learned she was working for Marc Anthony less than a from her June 2023 departure, the Company would enforce the non-compete agreement against her with legal action.

18. Upon Ms. Gospodarek's departure from Boston Beer on March 8, 2024, its representatives reiterated in her exit interview and exit paperwork that the Company would enforce its one-year non-compete provision against her. The exit paperwork, attached hereto as Exhibit C,

states in pertinent part:

> As a reminder, upon accepting a job offer with Boston Beer you signed an Employment Agreement ("the Agreement") (attached hereto) that contained a covenant not-to-compete ("non-compete") and a nonsolicitation clause. You are required to adhere to the terms of the Agreement, including both the non-compete and the non-solicitation clauses.
>
> Pursuant to paragraph 4(a) of the Agreement, the non-compete clause, you are prohibited from working for a competitor, as defined therein, until the expiration of one (1) year from the date on which your employment ends (the "Restricted Period"). Further, as set forth in your Offer Letter Boston Beer agreed to pay you consideration for your agreeing to and complying with the non-competition provisions of the Agreement. This payment will be processed with your final paycheck.
>
> Should you violate the terms of the Agreement, including the non-compete and non-solicitation clauses, the Company will take the appropriate steps to enforce the agreement, up to and including legal action.

19. Consequently, Ms. Gospodarek and other current and former Boston Beer employees have been intimidated by Boston Beer's threats to enforce its non-compete agreement, and thus afraid or unable to work in their industry of choice for at least an entire year—preventing them from applying to and/or accepting an offer of employment from another beer company.

20. Ms. Gospodarek is currently unemployed; she desires to continue working in the beer industry, but Boston Beer has threatened to take legal action against her and any of her prospective employers—which would likely result in costly legal fees and/or loss of her employment, and which would damage her reputation within the industry.

21. Ms. Gospodarek has found several current job openings for which she is qualified—and which she would readily accept, if offered—were Boston Beer not threatening to take legal action against her and any potential new employer. By way of example, the Chicago-based "Regional Sales Director – South" position with Heineken subsidiary Lagunitas Brewing Company is currently open. The position pays between $113,611 and $145,529—a significant increase from Ms. Gospodarek's 2023 annualized salary with Boston Beer.

22. Ms. Gospodarek is aware, however, of Boston Beer threatening legal action against at least one other former employee whom Heineken hired within one year of that employee's termination from Boston Beer.

***For Over Thirteen Years, Boston Beer Has Aggressively Enforced Its Unlawful Non-Compete Agreements Against to Prevent Entry- and Mid-Level Employees from Earning a Living.***

23. Upon information and belief, dating back until at least 2011 Boston Beer has required all employees—including entry and mid-level sales representatives, like Ms. Gospodarek—to sign a non-compete agreement.

24. Recently, several publications—including *Brewbound* and *The Boston Globe*—have reported on Boston Beer's aggressive enforcement of its non-compete agreement. In direct response to the *Brewbound* article, Boston Beer e-mailed its current employees on February 9, 2024, misleadingly suggesting that its investment in their training, and its need to protect confidential information and goodwill, justified its aggressive non-compete enforcement.

25. Since 2011, Boston Beer has also continued to acquire "craft breweries;" whenever it acquires a craft brewery, Boston Beer requires the employees at such breweries to sign the same non-compete agreement as a condition of continued employment—regardless of the employee's position or state of residence.

26. By way of example, when Boston Beer acquired craft brewery "Dogfish" in 2019, that company's sales representatives that were onboarded and required to sign a non-compete agreement in order to continue their employment.

27. Upon information and belief, approximately 30% of Dogfish's workforce refused to sign the non-compete agreement and chose to find employment elsewhere.

28. As recently as October 2023, Boston Beer sued former employee Brian Soudant and his new employer, Downeast Cider House, LLC.

29. The *Soudant* complaint stated that Boston Beer founder Jim Koch personally and intentionally "reached out" to Downeast Cider's owner to warn him that Mr. Soudant was subject to a non-compete agreement with Boston Beer, which Boston Beer intended to enforce against both Soudant and Downeast Cider.

30. Upon information and belief, Mr. Soudant was terminated from Downeast Cider shortly thereafter.

31. Boston Beer then dismissed its lawsuit against both Soudant and Downeast Cider.

***Plaintiff's Draconian Non-Compete Agreement With Boston Beer Should Be Reviewed Under Illinois Law, Under Which It Is Clearly Unreasonable, Unconscionable, and Unenforceable.***

32. Boston Beer's non-compete agreements are substantively unconscionable and constitute an impermissible restraint on trade.

33. Based on Boston Beer's arguments in its motion for a preliminary injunction against former employee Judd Hausner in 2011, Boston Beer will presumably argue that their non-compete agreements are governed by Massachusetts law. *See Boston Beer Co. v. Judd Hausner, Anchor Brewing Company LLC, et al.*, 1:11-cv-11706-GAO, (D. Mass. 2011), Docket No. 5, at 22-24.

34. However, where a Massachusetts-based employer makes employees sign a non-compete agreement containing a Massachusetts choice-of-law provision and an employee takes a new job in a different state with more pro-employee non-competition laws, Massachusetts courts refuse to apply the choice-of-law provision. The more liberal state's laws will apply under Massachusetts choice-of-law principles, where applying Massachusetts law would violate the other state's fundamental public policies favoring open competition and employee mobility. *See Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 479 (2018).

35. "Illinois views post-employment restrictive covenants that insist on absolute secrecy of any and all information as unreasonable and unenforceable because a person is allowed

6

to make a living, and cannot possibly not utilize any information from his past job." *Dressander v. Simplicity Fin. Mktg., Inc.*, No. 19 Civ. 1395, 2023 WL 2561733, at *12 (N.D. Ill. Mar. 17, 2023) (internal quotations and citation omitted).

36. Both Massachusetts and Illinois law dictates noncompete agreements must be reasonably limited in space and time. *See Sodexo Operations, LLC v. Abbe*, 382 F. Supp. 3d 162, 165 (D. Mass. 2019); *and Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011).

37. Several courts in Illinois have found one-year, nationwide non-competition agreements to be invalid." *Oce N. Am., Inc. v. Brazeau*, No. 09 Civ. 2381, 2009 WL 6056775, at *8 & n.79 (N.D. Ill. Sept. 4, 2009) (collecting citations), *r & r adopted*, 2010 WL 5033310 (Mar. 18, 2010). When "the temporal and geographic restrictions on an employee's conduct are broad, as they are here, the agreement's activity restrictions should be correspondingly narrowly drawn to protect the employee's ability to be employed in his chosen field." *Id*.

38. In fact, even under Massachusetts law, Boston Beer's non-compete provision is unenforceable, as Massachusetts similarly disfavors onerous and excessive non-compete agreements. *See* Mass. Non-Competition Agreement Act, Mass. Gen'l Laws, ch. 149, § 24L.

39. Parallel to Illinois, Massachusetts requires non-competition provisions must be no broader than necessary to protect a legitimate business interest; reasonable in terms of time, activity, and place; and "consonant with public policy." *Id.*, subsection b(iii-v, viii).

40. The Massachusetts Non-competition Agreement Act also commands that non-compete agreements "shall be supported by a garden leave clause or other mutually-agreed upon consideration between the employer and the employee, provided that such consideration is specified in the non-competition agreement." *Id.*, subsection b(vii).

41. Cognizable "garden leave" under this law must "(i) provide for the payment,

consistent with the requirements for the payment of wages . . . on a pro-rata basis during the entirety of the restricted period, of at least 50 percent of the employee's highest annualized base salary paid by the employer within the 2 years preceding the employee's termination . . ." *Id.*

42. Boston Beer's non-compete agreements are neither supported by a legitimate business interest nor narrowly tailored.

43. Boston Beer has no legitimate business interest that can justify the use of a non-compete agreement for its sales representatives.

44. Boston Beer's sales representatives do not hold or acquire trade secrets or other confidential proprietary information; and—even if, *arguendo*, they did—such information would be separately protected by the confidentiality agreement they signed.

45. Ms. Gospodarek was also not provided with reasonable consideration for execution of the non-compete agreement, and certainly not cognizable "garden leave" under Massachusetts law. She was provided only a *de minimis* payment of $3,000 (before taxes and withholdings), and she was not guaranteed employment for a specified period of time, or any other benefits.

46. The non-compete agreement purportedly binding Ms. Gospodarek is also not narrowly tailored and contained no geographic limits; it was, therefore, unreasonable, unconscionable, and unenforceable, as a matter of law.

47. Furthermore, Ms. Gospodarek's Employment Agreement with Boston Beer contained separate non-solicitation, confidentiality, and non-disparagement provisions—further demonstrating that the non-compete provision's restrictions were neither narrowly tailored nor designed to protect a legitimate business interest.[1]

---

[1] *See* M.G.L. c. 149, § 24L (b) (iii): "The agreement must be no broader than necessary to protect one or more of the following legitimate business interests of the employer: (A) the employer's trade secrets; (B) the employer's confidential information that otherwise would not qualify as a trade secret; or (C) the employer's goodwill. A non-competition agreement may be presumed necessary where the legitimate

48. Non-compete agreements significantly disrupt the labor market, as they have a chilling effect on the efforts of employees to seek continued employment in a field in which they have gained familiarity. Such clauses also have a chilling effect on the ability of businesses like Lone Pine, Anchor Steam, Heineken, and Downeast Cider to freely hire workers, by potentially subjecting these businesses to litigation, and by limiting the pool of available workers.

49. The use of non-compete agreements for at-will sales representatives like Ms. Gospodarek also limits the ability of employees to find new employment; it limits the ability of employees to move to a new state and find employment where Boston Beer sells its products; it hinders the upward mobility of workers looking for higher wages or advancement with new employment using skills obtained in their current employment; and it suppresses wages for employees who have limited negotiating power with both current and potential new employers when they are limited by a non-compete agreement.

50. This suppression of wages and hindrance on mobility impacts trade and commerce throughout Massachusetts, and beyond.

51. Accordingly, Boston Beer has engaged in unfair conduct in violation of the Massachusetts Non-Competition Agreement Act by requiring its current and former employees to sign unenforceable non-compete agreements without consideration, without a legitimate business reason, and without narrowly tailoring the agreements to protect any purportedly confidential or secret information.

52. To the extent that Boston Beer knows it will not—and *cannot*—enforce the terms of its non-compete agreement but has failed to inform Ms. Gospodarek, or the company's other current and former employees of such, Boston Beer has omitted disclosing material information

---

business interest cannot be adequately protected through an alternative restrictive covenant, including but not limited to a non-solicitation agreement or a non-disclosure or confidentiality agreement."

to its current and former employees.

53. Consumers benefit from competition among employers because a more competitive workforce will create more and higher quality goods and services.

54. In recognition of this, in January 2023, the Federal Trade Commission (FTC) "proposed a new rule that would ban employers from imposing non-competes on their workers, a widespread and often exploitative practice that suppresses wages, hampers innovation, and blocks entrepreneurs from starting new businesses."[2]

55. The FTC estimates that outlawing non-compete agreements "could increase wages by nearly $300 billion per year and expand career opportunities for about 30 million Americans." *Id.*

56. In September 2023, the Department of Labor joined the FTC in its efforts to ban non-compete agreements, signing an agreement intended to "bolster the FTC's efforts to protect workers by promoting competitive U.S. labor markets and putting an end to unfair, deceptive, and other unlawful acts and practices, as well as unfair methods of competition, that harm workers."[3]

## CAUSES OF ACTION

### First Cause of Action
### Declaratory Judgment That Non-Competition Agreement Is Invalid, 28 U.S.C. § 2201

57. The allegations contained in each of the preceding paragraphs are re-alleged and incorporated herein by reference.

---

[2] "FTC Proposes Rule to Ban Non-compete Clauses, Which Hurt Workers and Harm Competition" (last accessed March 4, 2024) available at: https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-proposes-rule-ban-non-compete-clauses-which-hurt-workers-harm-competition.

[3] "FTC, Department of Labor Partner to Protect Workers from Anticompetitive, Unfair, and Deceptive Practices" (last accessed March 4, 2024), *available at*: https://www.ftc.gov/news-events/news/press-releases/2023/09/ftc-department-labor-partner-protect-workers-anticompetitive-unfair-deceptive-practices.

58. The non-compete clause of the Employment Agreement that Boston Beer has enforced is unlawful and unenforceable under either Illinois or Massachusetts law, in particular because it is not narrowly tailored by scope or geography, and has no substantial business justification, so it offends public policy.

59. Nevertheless, Boston Beer has enforced, and continues to enforce, its invalid non-competition agreement against Plaintiff. that does not protect any legitimate business interest, is not consistent with public policy, is unreasonable in its scope.

60. As a result of Boston Beer's enforcement of, or threats to enforce, its unlawful non-competition agreement against Plaintiff, a controversy exists between the Parties concerning their legal rights and obligations.

61. This controversy, and Plaintiff's concern over Boston Beer's enforcement of its non-competition agreement, has sufficient immediacy to warrant declaratory relief, because Plaintiff has been prevented by legal uncertainty from seeking gainful employment, earning a living, and furthering her career.

62. A declaration of the Parties' rights and obligations per 28 U.S.C. § 2201 will resolve the Parties' controversy, and enable Plaintiff to earn a living and pursue her chosen career.

## Second Cause of Action
### Violation of Mass. Gen. L. ch. 149 § 24L

63. The allegations contained in each of the preceding paragraphs are re-alleged and incorporated herein by reference.

64. Under the Massachusetts Non-Competition Agreement Act, a non-compete agreement "shall be supported by a garden leave clause or other mutually-agreed upon consideration between the employer and the employee, provided that such consideration is specified in the non-competition agreement." *Id.*, subsection b(vii).

65. Further, under the Massachusetts Non-Competition Agreement Act, "garden leave" must "(i) provide for the payment, consistent with the requirements for the payment of wages . . . on a pro-rata basis during the entirety of the restricted period, of at least 50 percent of the employee's highest annualized base salary paid by the employer within the 2 years preceding the employee's termination . . ." *Id.*

66. Boston Beer compelled Plaintiff to sign a non-compete provision that contained no garden leave clause, much less one promising the legally mandated amount of consideration. And when Plaintiff resigned from Boston Beer, she was offered only a *de minimis* severance package, worth only several thousand dollars – and not anything approaching 50% of her yearly salary. Yet Plaintiff was warned that she would be strictly held to the unconscionable Boston Beer non-compete provision anyway.

67. Tellingly, Boston Beer did this not because Plaintiff had any highly valuable or unique knowledge or information upon which Boston Beer relied, nor because Boston Beer particularly valued Plaintiff as an employee—indeed she had been unfairly passed over for promotions or advantageous professional opportunities at Boston Beer. Rather, Boston Beer's motive was simply malicious or retaliatory.

68. As a direct result of Boston Beer's violation of the Massachusetts Non-Competition Agreement Act as described above, Plaintiff has suffered damages in amounts to be determined at trial, including, but not limited to: lost garden leave; lost past and future income and benefits; and lost job and career opportunities.

## Third Cause of Action
### Violation of Mass. Gen. L. ch. 93A

69. The allegations contained in each of the preceding paragraphs are re-alleged and incorporated herein by reference.

70. Under the Massachusetts Consumer Protection Law, Section 2, unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

71. Tellingly, subpart (b) of this Section state that this provision is to be interpreted by looking to the Federal Trade Commission, which has specifically ruled that non-competition agreements are unfair.

72. Boston Beer forced Plaintiff (and many other employees) to sign and abide by complete unfair non-competition agreements. And Boston Beer has deceptively failed to pay employees such as Plaintiff the legally mandated garden leave when in consideration for abiding by that non-competition provision when they leave the Company.

73. As a direct result of Boston Beer's violation of the Massachusetts Consumer Protection Law as described xabove, Plaintiff has suffered damages in amounts to be determined at trial, including, but not limited to: lost garden leave; lost past and future income and benefits; and lost job and career opportunities.

**Fourth Cause of Action**
**Negligent Misrepresentation**

74. The allegations contained in each of the preceding paragraphs are re-alleged and incorporated herein by reference.

75. Dating back to at least 2011, Boston Beer knowingly led its current and former employees, including Plaintiff, to believe they were bound by an enforceable one-year noncompete agreement with the expectation they would simply comply and not argue its legal validity.

76. Boston Beer failed to exercise reasonable care or competence in obtaining or communicating this information.[4]

---

[4] Upon information and belief, Boston Beer has recently included this new legal disclaimer in its exit paperwork: "Boston Beer is committed to adhering to all federal, state, and local laws surrounding the use of non-compete and non-solicit agreements. This section does not apply to coworkers employed in

13

77. As such, in the course its business, Boston Beer supplied false information for the guidance of Plaintiff and its other employees, upon which they justifiably relied, causing them pecuniary loss in an amount to be determined at trial.

### Fifth Cause of Action
### Breach of Implied Covenant of Good Faith and Fair Dealing

78. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

79. Boston Beer entered into written contracts with Plaintiff.

80. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.

81. The covenant provides that neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract.

82. Through its actions as stated herein, Boston Beer acted in bad faith and breached the implied covenant of good faith and fair dealing through its wrongful conduct to Plaintiff and its other employees at their expense, in amounts to be determined at trial.

### Sixth Cause of Action
### Unjust Enrichment

83. The allegations contained in each of the preceding paragraphs are re-alleged and incorporated herein by reference.

84. As a direct result of Boston Beer's draconian non-compete provision, Plaintiff and employees like her have been stuck in under-paid jobs, unable or afraid to seek better opportunities with other companies who would pay her substantially more money and better benefits.

---

California or any other jurisdiction that prohibits the use of such agreements." This flimsy disclaimer, only added to their agreements in the wake of the recent *Brewbound* and *Boston Globe* articles, is a tacit admission by Boston Beer that it was entering into non-compete agreements with employees like Plaintiff, in a number of states, despite knowing that those agreements were unenforceable.

85. In essence, Boston Beer has been able to keep Plaintiff and other employees chained to it in a form of indentured servitude, as many employees (like Plaintiff) are unable to afford being unemployed for a full year.

86. As a direct result, Boston Beer has been able to enjoy the substantial fruits of Plaintiff's labor and efforts at a significantly under-valued price – and in so doing has been unjustly enriched at Plaintiff's expense, in amounts to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a preliminary injunction in the forms set forth in Plaintiff's Motion for Preliminary Injunction, filed contemporaneously herewith.

b. Enter a permanent injunction consistent with the preliminary injunction.

c. Award Plaintiff compensatory and/or statutory damages, pre- and post-judgment interest, and any other remedy available under law, in an amount to be determined at trial.

d. Award Plaintiff her reasonable costs and attorneys' fees.

e. Any such other and further relief that the Court deems equitable and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 29, 2024

Respectfully Submitted,

_____
Ashley M. Pileika, Mass. State Bar No. 709954
Darren R. Wolf, Texas State Bar No. 24072430*
**Law Office of Darren Wolf, P.C.**
1701 N. Market St., Suite 210
Dallas, Texas 75202
P: 214-346-5355 | F: 214-346-5909
ashley@darrenwolf.com
darren@darrenwolf.com
*Pro hac vice application forthcoming*

15